No. 40,712

Securities Acceptance Corporation, *Appellee*, v. Dwaine R. Perkins, d/b/a Perkins Pontiac Company, *Appellant.*

(318 P. 2d 1058)

Opinion filed December 7, 1957.

*Charles Boyle,* of Russell, argued the cause and was on the briefs for the appellant.

*H. Lee Turner,* of Great Bend, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This is an appeal from a judgment of the trial court in favor of plaintiff and against the defendant for the unpaid balance due on a promissory note which had been secured by a chattel mortgage on a new automobile that defendant had sold to a purchaser.

The defendant, Dwaine R. Perkins, doing business as the Perkins Pontiac Company, was a dealer in new Pontiac cars. Plaintiff, a Nebraska corporation, was a finance company obligated by contract to purchase notes and mortgages executed by purchasers of new cars from defendant. The notes and mortgages represented the balance due upon the purchase price of the new cars after the down payment had been made. Defendant endorsed the notes and mortgages to plaintiff without recourse.

The pertinent part of the authorized dealer's reserve agreement controlling the dealings between plaintiff and defendant provided:

"EXCEPTIONS. Dealer is not protected against loss resulting from Collision or in event of Conversion or Confiscation under the following circumstances where:

"The Dealer has made these forms of protection known to the purchaser; The purchaser does not make an actual down payment equal to or greater than the minimum required in the regular published terms of the Corporation; Such down payment is not made in actual cash . . . *Loss results*

*from failure of Dealer, when required by State-laws, to apply for Certificate of Title showing the Corporation lien. . . .*

"In any instance where the Dealer is not protected by reason of any circumstance in the foregoing paragraph the Corporation is authorized to delete the phrase 'without recourse' from the particular note affected and to substitute therefor a waiver of demand, notice of non-payment, protest and notice of protest and in the event of non-payment of the note or any installment thereof the Dealer shall upon request of the Corporation pay the note." (Our emphasis.)

On April 30, 1954, defendant sold a new Pontiac to Walter Kleweno and received Kleweno's personal check in the sum of $1,000 as the down payment. The balance was covered by a note in the amount of $2,456.40 which was secured by a mortgage on the new Pontiac. Both the note and mortgage dated April 30, 1954, were payable to defendant. When Kleweno's check was presented for payment, it developed the check was no good whereupon defendant refused to complete the sale until May 4, 1954, when Kleweno paid $600.00 to pick up the bad check.

On May 5, 1954, defendant and Kleweno went to the office of the treasurer of Rush county who testified as follows during the trial:

"Q. ˙ If you remember, when these papers came to your office, was there any conversation between you and Mr. Perkins, concerning any lien on this vehicle. A. As I recall, I asked him if it should be shown on the bill of sale, and, he said there was a little bit of money owed, but, not to record it, and since it is not listed on the bill of sale there is no reason—

"Mr. Boyle: Object until it is shown who 'He' was.

"A. I beg your pardon, Mr. Perkins. Mr. Kleweno and Mr. Perkins were conversing, and, we are not required to put in on the application of title unless it is shown on the bill of sale.

"Q. There was some discussion between you and Mr. Perkins and Mr. Kleweno, as to whether or not he was required to show a lien on this? A. I asked him if there was.

"Q. Who, was? A. I asked Mr. Perkins if there was a lien and he said there was a small amount of money, but, they wanted a clear title. I proceeded to fill out their papers and what their conversation was, together, I couldn't say for sure."

The record shows by the testimony of plaintiff's branch manager that on May 4, 1954, the note and mortgage were presented at that office by defendant and plaintiff's check in the amount of $1,900.00 was executed to defendant. From the record this is the only evidence bearing on the date the actual assignment took place, pursuant to the authorized dealer's reserve agreement.

Under G. S. 1949, 8-127, every owner of a motor vehicle before operation thereof on any Kansas highway, shall apply for and obtain the registration of the vehicle as provided in G. S. 1949, 8-135 (c) which, in part, reads:

". . . no vehicle required to be registered hereunder shall be registered on number plates issued therefor . . . unless the applicant for registration thereof shall at the same time present satisfactory evidence of ownership and make application for an original certificate of title for such vehicle. (1) Said application for certificate of title shall be made by the owner . . . and shall contain . . . in the case of a new vehicle, the date first sold by the manufacturer or dealer to the customer, together with a statement of the applicant's source of title and *all liens or encumbrances thereon* . . . (3) *Dealers shall execute, upon delivery to the purchaser of every vehicle, a bill of sale stating the lien or encumbrances thereon.* . . ." (Our emphasis.)

On May 20, 1954, Kleweno surrendered his Kansas certificate of title free and clear of any lien and obtained a Colorado license on the automobile in question.

The testimony of plaintiff's branch manager further showed that he had made demand on Kleweno for the balance of the note and after default by Kleweno, defendant was notified of plaintiff's election to proceed against defendant under the exception provision of the authorized dealer's reserve agreement.

After judgment was granted to plaintiff for the unpaid balance of the note, interest, and costs, the defendant filed a motion for new trial which was overruled. This appeal followed. Defendant claimed six specifications of error but stated that in the appeal only two questions need be answered under the terms of the authorized dealer's reserve agreement. They are:

1. Was the dealer required under state laws to apply for a certificate of title?
2. Is a new car dealer required by the laws of this state to endorse upon the bill of sale executed by him on the sale of a new car, a purchase price note and mortgage, executed by the purchaser following such sale?

The terms of the contract between defendant and plaintiff were unambiguous and were conclusive as to their rights and liabilities. (7 Blashfield on Automobiles, § 4615, p. 520.) Laws in effect at the time of a transaction are a part of a contract (2 Hatcher's Kansas Digest, rev. ed., Contracts, § 48, p. 27) and, as can be seen in the exception clause in our case, state laws were specifically referred to. Thus defendant was required not only to execute a bill of sale at the time he delivered the car to Kleweno, but he was also

required to state the lien thereon. This served as a protection to defendant and protected the plaintiff as well.

It is a general rule of law that an assignee acquires no greater rights from the assignment of a note and mortgage than those possessed by the assignor (7 Blashfield on Automobiles, § 4613, p. 506) and this rule is followed in Kansas. (*Commercial Credit Corporation v. Kemp*, 176 Kan. 350, 270 P. 2d 209.) When defendant gave Kleweno a clear bill of sale, it necessarily followed that a clear certificate of title would be forthcoming and this afforded Kleweno the opportunity thereafter to do anything that he pleased with the car. A subsequent sale to an innocent purchaser cut off any rights of repossession of either plaintiff or defendant and gave clear title to the innocent purchaser. (*Sorensen v. Pagenkopf*, 151 Kan. 913, 101 P. 2d 928; *General Motors Acceptance Corp. v. Davis*, 169 Kan. 220, 218 P. 2d 181, 18 A. L. R. 2d 808, and see anno. pp. 813, 816, for a good discussion on the subject; *Ruth v. Dumler*, 170 Kan. 698, 228 P. 2d 694; *Universal Finance Corp. v. Schmid*, 177 Kan. 414, 280 P. 2d 577.)

There is no reason or justification shown in the record for defendant executing a clear bill of sale and actively assisting Kleweno in obtaining a clear certificate of title. Defendant could have so easily protected himself by showing the lien on the note and mortgage. His theory that Kleweno did not own the car on April 30, 1954, avails him nothing. (*Bankers Investment Co. v. Meeker*, 166 Kan. 209, 201 P. 2d 117.) When defendant failed to show the lien on the bill of sale, as already stated, he brought himself within the exception clause of his contract with plaintiff and he cannot now be heard to complain of plaintiff's acting thereunder. We certainly are not impressed with his theory that the words "when required by statute" apply only when a dealer is required to apply for a certificate of title. That is not the law and it was not the clear meaning of the contract. We will labor the point no further.

Defendant complains that the trial court considered erroneous statements in arriving at its decision. On appellate review this court is concerned only with the correctness of a decision of a trial court and not with the precise correctness of the reasoning of that court in so deciding. One of our many cases so holding is *Rauh v. Dumler*, supra, where it was said:

"On review this court, of course, is never concerned with the precise cor-

rectness of every statement contained in a memorandum opinion such as this or, for that matter, even with the reasoning disclosed therein. Our concern is with the correctness of the decision." (p. 702.)

Other contentions of defendant raised herein are not material and, therefore, do not merit discussion in this particular case. Nothing approaching reversible error is shown in the decision of the trial court and the judgment is affirmed.