INDUSTRIAL CREDIT COMPANY, Appellants, v. BILLION MOTORS, INC. et al., Respondents

(57 N. W.2d 523)

(File No. 9351. Opinion filed March 16, 1953)

**Davenport, Evans, Hurwitz & Smith,** Sioux Falls, for Defendants and Appellants.

**Max Royhl and Boyd M. Benson,** Huron, for Plaintiff and Respondent.

SMITH, J. The trial court held that defendants, vendors of a motor vehicle under a duly filed conditional sales

contract, were estopped to assert their title to said vehicle as against plaintiff, a subsequent purchaser. The defendants have appealed.

The motor vehicle was owned by one Alma B. Anderson. She sold it to defendant Billion Motors, Inc., a licensed motor vehicle dealer of Sioux Falls, S. Dak., and delivered with it her duly assigned certificate of title. On June 30, 1950 defendant Billion Motors, Inc., sold the vehicle to one Louis Torgerson, of Mitchell, Davison county, South Dakota, pursuant to a conditional sales contract which was duly filed in Davison county. In the course of the transaction Billion Motors delivered to Torgerson the above described certificate of title. In so doing Billion Motors, Inc., executed the form of assignment of a licensed dealer which the secretary of state had caused to be printed on the reverse side of that certificate, without mentioning therein its conditional sales contract. Omitting certain words of instruction appearing in the form, the completed assignment delivered to Torgerson reads as follows:

"Assignment by South Dakota Licensed Dealer Only For value received we hereby sell, assign and transfer unto Louis Torgerson, Address 524 East First Street Mitchell South Dakota the motor vehicle * * * described on the reverse side of this Certificate of Title, and I(we) hereby warrant the title of said motor vehicle or motorcycle, and certify that at the time of delivery the same is subject to the following liens or encumbrances, and none other.

$ _____
    (Amount)             (Kind)         (Date)

In Favor of _____ Address _____
Sold this 30 day of June, 1950.

                       Billion Motors
                       By H. A. Billion, Pres.
                       Dealer License No. D380".

Thereafter the words "or Wanita" were inserted just above the name of Louis Torgerson. On July 7, 1950 the secretary of state of South Dakota issued a new certificate of title to Louis or Wanita Torgerson describing said vehicle which certificate recited, "I Do Further Certify, That I have used

reasonable diligence in ascertaining whether or not the facts stated in said application for a Certificate of Title are true, and that I am satisfied that the applicant is the lawful owner of said motor vehicle * * * or is otherwise entitled to have same registered in his name. Wherefore, I do hereby certify that the above named applicant has been duly registered in the office of the Secretary of State as the lawful owner of the above described motor vehicle * * *, or is otherwise entitled to have the same registered in his name, and that it appears upon the official records that at the date of the issuance of this Certificate of Title said motor vehicle * * * was subject to the following liens:

Amount                          Kind                    Favor of".

Thereafter the North Side Motors of Huron, South Dakota, a licensed dealer, purchased the vehicle from Torgerson and received therewith his certificate of title duly assigned, in which assignment Torgerson represented that the vehicle was free of liens or encumbrances. The foregoing assignment was dated August 14, 1950. Thereafter North Side Motors sold the car to Grand Motor Co., Inc., of Minneapolis, and in so doing delivered and assigned the certificate of title by executing the dealer's form of assignment on the reverse side, thus warranting the title, and representing the car to be free of liens and encumbrances. In turn Grand Motors sold the car by conditional sales contract to one Virgil S. Lokken of Minneapolis. The Lokken contract was duly filed in Hennepin county and was assigned to plaintiff, Industrial Credit Company.

It is stipulated that all those claiming through Torgerson dealt with the vehicle without any actual knowledge or notice of the first described conditional sales contract and that they relied upon the clear certificate of title of Torgerson and the assignments thereon, and that Torgerson expressly represented to North Side Motors that there were no encumbrances on the vehicle.

The original conditional sales contract of Torgerson was assigned to defendant Federated Finance Company, a copartnership. When it was learned by Billion Motors and by the copartnership that the car had been moved to Minne-

apolis, they promptly filed a certified copy of the original conditional sales contract in Hennepin county, took possession of the car, returned it to South Dakota and resold it. The action is by Industrial Credit Co. against Billion Motors, Inc., and the copartnership in conversion.

Because Billion Motors failed to mention its conditional sales contract in its assignment of the Alma B. Anderson certificate of title to Torgerson, the trial court held that it, and its assignees, were estopped to assert title to the vehicle.

These transactions preceded the effective date of the current motor vehicle certificate of title statutes. Cf. SDC Supp. 44.02. The provisions of statute then in force should be outlined.

An applicant for registration of a motor vehicle by the secretary of state was required to make application for a certificate of title. Among other things such an application was required to show applicant's title and describe any liens or encumbrances on the vehicle. The certificate of title issued by the secretary of state was required to contain a statement of any liens or encumbrances which the application revealed. SDC 44.0202.

In the event of the sale of a motor vehicle for which a certificate of title had been issued the holder thereof was required to endorse on the back of the same an assignment thereof with warranty of title in the form printed thereon, with a statement of all liens or encumbrances on said motor vehicle, and to deliver the same to the purchaser at the time of the delivery to him of the motor vehicle. A licensed dealer was permitted to retain the assigned certificate until he sold the vehicle whereupon he was required to execute and deliver to the purchaser an affidavit of conveyance or assignment in such form as the secretary of state prescribed. Thereupon the purchaser of said motor vehicle was required to apply for and receive from the secretary of state a certificate of title. SDC 44.0203 as amended by Ch. 187, Laws 1945.

One who drove a vehicle without first securing a certificate of title or violated the provisions of SDC 44.0203 was subject to drastic sanctions. SDC 44.9908.

The contention we are to consider is whether the court erred in holding the defendants to be estopped to assert rights under the Torgerson conditional sales contract as against plaintiff. Because the matter is presented here on the theory that plaintiff stands in the shoes of North Side Motors of Huron, and defendant copartners in the position of Billion Motors, we will decide whether Billion Motors is estopped to assert its title as against North Side Motors of Huron, the immediate purchaser from Torgerson.

The theory of Billion Motors is that there is no basis for raising an estoppel against it. It does not claim that North Side Motors had actual knowledge of the Torgerson conditional sales contract. It argues first that (a) North Side Motors was charged with constructive knowledge of that contract because it was duly filed as provided by the conditional sales act, cf. SDC 54.0204, 54.0205 and 54.0206 and (b) that it learned from the certificate of title of Torgerson of his residence in Davison county, and was negligent in not examining the records of that county before purchasing the car, and second that its failure to mention the Torgerson conditional sales contract in its assignment of the Anderson certificate of title is without significance because SDC 44.02, the motor vehicle certificate of title act, was not intended to operate as a recording act or to supersede the recording acts dealing with conditional sales contracts, and was not intended as a protection to subsequent purchasers and encumbrancers.

The absence in the cited motor vehicle title act of provisions permitting the filing of a chattel mortgage or lien claim in the office of the secretary of state and requiring a notation thereof on any outstanding certificate of title, as well as the absence therein of express provisions for constructive notice to subsequent purchasers or encumbrancers and other factors, convinces us that SDC 44.02 was not intended as a recording act or to supersede any of the provisions of the conditional sales act, SDC 54.02. However, we cannot subscribe to the view advocated by counsel for Billion Motors that the cited motor vehicle certificate of title act was not enacted for the benefit of subsequent purchasers of motor vehicles.

That the principal purpose of the act was to supply the state with a weapon in its war against the automobile thief, we do not doubt. But the provisions of this act outran that central purpose. It required an applicant for a certificate of title to show the liens and encumbrances on the vehicle, and that the secretary of state include a statement of such liens and encumbrances upon the face of the certificate of title issued. This requirement that such liens and encumbrances appear on the certificate of title and in an assignment, so far as we can discern, could have had no other purpose than, as a preventative of fraud, to provide for a title instrument which would assure a purchaser of actual knowledge of any existing encumbrance within the knowledge of his vendor, or within the knowledge of any prior vendor at the time he transferred title to the vehicle.

If Billion Motors had complied with SDC 44.02 and had noted its conditional sales contract in its assignment endorsed on the Anderson certificate of title, and nevertheless, through some fraudulent scheme Torgerson had procured a clear certificate of title to the car in question, and with that certificate, and the car in his possession had induced North Side Motors of Huron to deal on the assumption that it was unencumbered, it could not be questioned but what North Side Motors would have been charged with knowledge of the Billion Motors' rights under the Torgerson conditional sales contract and would have held the car subject to those rights. However, the facts before us reveal that at the very moment Billion Motors was receiving the conditional sales contract from Torgerson, and under which it now claims, it delivered, not only the possession of the car to him, but an instrument reading "we hereby sell, assign, and transfer unto Louis Torgerson * * * the motor vehicle described * * * and we hereby warrant the title of said motor vehicle * * *, and certify that at the time of delivery the same is subject to the following liens or encumbrances, and none other", leaving the spaces provided for showing existing encumbrances blank. Thus, by this instrument, they not only purported to transfer absolute title to Torgerson, but to certify that the vehicle was clear of encumbrances. It was this instrument and the possession of the car which enabled

Torgerson to defraud North Side Motors. With that instrument in hand he had no trouble in procuring a clear certificate from the secretary of state and thereby misleading North Side Motors.

In many similar situations, the courts have invoked the familiar principle that where one of two innocent persons must suffer from the wrongful act of a third, the one mak-·ing the wrongful act possible must bear the loss. The cases are collected in an annotation to the case of General Motors Acceptance Corporation v. Davis, 169 Kan. 220, 218 P.2d 181, 18 A.L.R.2d 808. We have concluded that neither the filing of the Torgerson conditional sales contract, and the resulting constructive notice therefrom, nor the negligence of North Side Motors in failing to examine that record, should be considered as an impediment to the application of the above-mentioned principle in the case at bar.

If Billion Motors had been present when Torgerson was selling to North Side Motors, and had affirmatively represented that it knew of no encumbrance on the vehicle, it would not be heard to claim rights under its conditional sales contract. Although it was not present, the certificate of title Torgerson was able to present to North Side Motors, because of the negligence of Billion Motors, represented that Billion Motors as a prior vendor knew of no encumbrance on the car at the time of its transfer to Torgerson. That certificate but reflected the contents of the assignment of Billion Motors. In such circumstances it should be estopped to assert its title.

Under somewhat dissimilar facts the reason for such an estoppel was clearly stated by the late Mr. Justice Rutledge in Fogle v. General Credit, 74 App.D.C. 208, 122 F.2d 45, 49, 136 A.L.R. 814 at page 820. He wrote,

"* * * The statute is intended ordinarily to make a recorded instrument effective to give constructive notice to all with whom the person in possession may undertake to deal. But the protection is not entirely one-sided or absolute. The statute has another function, namely, to provide an opportunity for investigation of the title and discovery of liens. The two functions are closely related. The oppor-

tunity to investigate is the foundation of the constructive notice. When it exists unimpaired by any act of the mortgagee, the statute casts the burden of investigation upon those who may deal with the mortgagor, and their failure to make it assumes something of the quality of negligence. But the statute is a bulwark, not a trap. The mortgagee is favored so long as he acts consistently with the statutory conditions. But when he goes further and either by his conduct prevents the purchaser from making the usual investigation or takes advantage of circumstances which he knows or reasonably should know would have this effect, he destroys the foundation upon which his own protection rests. He cannot throw the purchaser off guard concerning the protection which the statute gives to him and take advantage at the same time of what otherwise would or might have been discovered. Thus, if the mortgagee clothes the mortgagor with the indicia of ownership, or gives him authority to sell the property, or stands by in silence and watches the mortgagor deal with it as owner, he nullifies the effect of recording by his inconsistent representation."

The learned trial court wrote, "I think that in this case Billion Motors must be charged with the active misrepresentation made by Torgerson when he transferred the automobile, that it was subject to no incumbrance. Billion Motor violated the law and by such violation made it possible for Torgerson to make such misrepresentation. Under such circumstances, the doctrine of constructive notice should not be applied to defeat an estoppel as against Billion Motors to assert an interest based on a conditional sales contract which it failed to set out in the certificate of title as required by law. Sec. 19 Am.Jur., Estoppel, Secs. 116, 117." And see General Motors Acceptance Corp. v. Davis, supra.

We concur in that view and therefore, the judgment of the trial court is affirmed.

All the Judges concur.