408 P.2d 251

**PATTERSON MOTORS, INC., an Arizona corporation, and Fidelity & Deposit Company of Maryland, Appellants,**

v.

**Alfonso CORTEZ et ux., and Glen Kricheldorf, et ux., Appellees.** *

**No. 2 CA–CIV 94.**

Court of Appeals of Arizona.

Dec. 7, 1965.

---

* This appeal was filed with the Arizona Supreme Court and assigned that Court's

No. 8399. The matter was referred to this Court pursuant to § 12–120.23 A.R.S.

Cordova, Goss & Mariscal, by Harry T. Goss, Phoenix, for appellants.

Whitehill, Feldman, Scott & Berger, by Stanley G. Feldman, Tucson, Richard Keefe, Tucson, for appellees.

KRUCKER, Chief Judge.

Appellant, plaintiff below, appeals from a partial summary judgment in favor of the appellees, defendants below, and from a final judgment determining the value of motor vehicles which had been replevied from them.

Plaintiff, as a dealer in new and used automobiles, had delivered to another dealer, Holaday Motors, three vehicles, title to which was to pass when Patterson's bank drafts, drawn on Holaday Motors, were accepted and honored. The drafts were never paid, but Holaday nevertheless sold two of the vehicles to the defendants. Neither Holaday nor defendants had obtained certificates of title or other indicia of ownership to the vehicles, although the defendants had been promised by Holaday that their applications to the State of Arizona for certificates of title would be granted in due course.

The plaintiff, having replevied the vehicles, obtained certificates of title and thereafter sold the vehicles in the regular course of its business.

To decide this appeal we must interpret A.R.S. § 28–314, Transfer of Title; Re-

registration, subsection A, which provides in part:

"When the owner of a registered vehicle transfers or assigns his title or interest thereto, the registration of the vehicle shall expire * * * Upon the transfer or assignment, the owner shall remove the registration card issued for the vehicle and endorse upon the reverse side thereof the name and address of the transferee and the date of transfer, and shall immediately forward the card to the vehicle division. The owner shall also endorse on the back of the certificate of title to the vehicle, if issued, any assignment thereof, with the warranty of title in the form printed thereon, and shall deliver the certificate to the purchaser or transferee at the time of the delivery to him of the motor vehicle * * *"

■ The specific question we must answer is whether this statute prevents the application of the so-called equitable estoppel doctrine of the Uniform Sales Act to the sale of a vehicle. Under that doctrine, one who clothes a seller of goods with the apparent or ostensible authority to sell such goods is estopped, as against a subsequent innocent purchaser for value, from asserting title to such goods. The language in which this doctrine is expressed appears in A.R.S. § 44–223, subsection A, as follows:

"A. Subject to the provisions of this chapter, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, *unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell.*" (Emphasis added)

It is significant that the Arizona reregistration statute does not impose any penalty for noncompliance. This would seem to indicate that the legislature did not intend to abrogate the doctrine of equitable estoppel completely. Had the legislature wished to exclude the doctrine of equitable estoppel from the application of A.R.S. § 28–314, it could have done so specifically when it enacted Title 28. Statutes in the states where the doctrine of equitable estoppel may not be invoked to defeat the title of the registered owner often include penalty provisions. Clanton's Auto Auction Sales, Inc. v. Young, 239 S.C. 250, 122 S.E.2d 640 (1961). For example, the Missouri title and registration statute includes § 301.210, subdivision 4, V.A.M.S., which provides:

" * * * and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void."

In Ohio, Revised Code, § 4505.04, provides:

"No person acquiring a motor vehicle from the owner thereof * * * shall acquire any right, title, claim, or interest in or to said motor vehicle until such person has had issued to him a certificate of title to said motor vehicle * * * nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title * * *"

■■ Both plaintiff and defendants are relatively innocent parties in this law suit. However, where one of two innocent parties must suffer because of the action of a third person, the loss should fall upon the one who, by his conduct, created the circumstances which enabled the third party to perpetrate the wrong or cause the loss. Dissing v. Jones, 85 Ariz. 139, 141, 333 P.2d 725, 726 (1958). In this case, plaintiff was a dealer in new and used automobiles, familiar with the requirements for registration and financing of vehicles, as well as the prevailing practices in the purchase and sale of vehicles from wholesalers. Yet, he gave possession of two cars to another dealer whom he must have known could sell the cars in the ordinary course of its business. His conduct created the circumstances enabling Holaday Motors to perpetrate

the wrong and cause the loss. To require that purchasers of automobiles exhaustively investigate the history of title to vehicles they are attempting to purchase from licensed dealers would place an undue burden upon them. The object of motor registration statutes is not to impede the sales of motor vehicles but to make it safer for purchasers by preventing the sale of stolen or converted automobiles. Kelsoe v. Grouskay, 70 Ariz. 152, 217 P.2d 915 (1950). The burden of protecting the legitimacy of auto sales, if any, should be placed upon wholesale and retail auto dealers since they are in a far better position, than is a private citizen, to discover and guard against misconduct and undertake protective measures.

In Kelsoe v. Grouskay, supra, plaintiff had sold a car and had delivered possession and a certificate of title endorsed in blank. Payment was made partly in cash and the purchaser's check for the balance. The check was returned unpaid because there were insufficient funds in the purchaser's account. In the meantime, the purchaser had sold the car to defendant. The Supreme Court reversed a judgment in favor of the plaintiff and in a dictum said:

> "Not one word was said by Grouskay (the plaintiff) to Karlyle (his purchaser) at the time to the effect that title to the car was to remain in him until it was determined that his check was good. Plaintiffs' relinquishment of both possession of the car and certificate of title flatly contradicts such an intent. The exercise of either precaution would have fully protected plaintiffs as against a subsequent purchaser of the car."

In the Kelsoe case, one private individual had sold to another private individual, whereas the issue in the present case is whether an owner, who is an automobile dealer, may be estopped to claim ownership where he has knowingly delivered possession of automobiles to another dealer in the same business. The dictum of the Kelsoe case, therefore, cannot be controlling in this case because the two cases are distinguishable on their facts.

The plaintiff believes that the lower court erred in granting summary judgment also because there was an issue as to whether or not plaintiff or any of its agents did in fact deliver physical possession of the vehicles to the wrongdoer. We have examined the depositions of all the parties and are unable to find any support for this view.

 Since this Court is unable to conclude that it was the intent of the state legislature, in adopting A.R.S. § 28–314, to abrogate the doctrine of estoppel, as provided for in our Uniform Sales Act, A.R.S. § 44–223, with regard to the sale of motor vehicles, the judgments are affirmed.

HATHAWAY, J., and MARY ANNE RICHEY, Superior Court Judge, concur.

NOTE: Judge John F. MOLLOY, having requested that he be relieved from consideration of this matter, Judge Mary Anne Richey was called to sit in his stead and participate in the determination of this decision.